Good morning. Lynn Hamilton appearing for Appellant Rivera-Martinez. I'm from Mesa, Arizona. In this matter, I know that you're familiar already with the briefing that's been done. I would first like to indicate that I'm going to withdraw Issue 4. I misread a statement made by the AUSA during the transcripts, so I'm withdrawing 4 altogether. Thank you for your candor. I would like to begin with the motion for mistrial based on the law enforcement officer's reference to finding my client at the Yuma County Jail. This had been discussed in camera. Judge Martone had made a very specific order directing that this not be brought up. The AUSA was very careful in tiptoeing around this during questioning. Judge Martone made this order literally minutes before Officer Castellanos took the stand. He's a professional witness, and we would submit that in this matter, there's really no excuse. I think you're forced to come to the conclusion that Officer Castellanos is maybe a smart aleck. And I would submit that this is a perfect case to send perhaps a message to this officer, because you don't want to see someone like me coming back in a few months on a case where it's a 16 defendant drug smuggling case that takes six weeks of trial, and Officer Castellanos does a similar thing. This is a good case in which to send a message to Officer Castellanos that this is not allowed. We have a little bit harder situation here because the mistrial motion was made after the jury had gone to deliberate. I appreciate that. And of course, you know that my client was pro per. And while it was a little bit delayed, more than what we as attorneys would normally do, it was pretty close. And all in all, we think that there would be merit in considering the motion for mistrial in this particular circumstance, given that he was pro per, and the motion was made pretty quick in time. Not perfectly, but pretty quick in this situation. Additionally, we would move on and urge that the sentence in this matter was unreasonable. We believe in this matter that Judge Martone erred when he repeatedly referenced the fact that my client had elected to go to trial. At almost every hearing and every recess, Judge Martone was dismayed that they were going to trial. It seemed like it was a waste of time, and he said so. And we believe that under McCarty, you can consider whether the sentencing decision was based in part on the fact that my client went to trial. In McCarty, it says the sentencing decision can be inferred from both the PSR as well as the record as a whole. And we believe that the record as a whole does support the conclusion that my client was penalized to some extent for having elected to go to trial his constitutional right. Additionally, we feel that Judge Martone gave undue weight to the old guidelines. The reason why Judge Martone initially rejected the fast-track favorable guilty plea was because he said, well, this isn't fair. In the last time when my client was convicted, he had a total sentence of first he got 24 months, and then he got an additional 37 months for violating probation, or a total of 61 months. That was under the 1999 code. Now, the 1999 code had a harsher penalty system and allowed for a 16-level upward zip for a client who had a prior. Now, that has since changed, and now we have those graduated stair steps going up. We're not just an immediate jump to plus 16. This sentencing guidelines are only discretionary. They consider them. You have to look over to the reasonableness statute. Absolutely. And as I read what the district judge said, he was somewhat concerned that this individual had not learned their lesson, and he thought that the audit he couldn't see giving him less time for this event than he got last time for the same event. And so he didn't think very much of the plea bargain, and he's the one ultimately that decides plea bargains. I know as a district judge, I accepted most of the plea bargains, but not all of them, the ultimate responsibilities of the district judge. Why is that wrong? In this particular situation, of course, it was up to Judge Martone whether he accepted or rejected the plea agreement. But then when it came time for sentencing, and he said, well, if you look back at that last sentence where he got the 61 months, that was based on old guidelines, pre-booker, and a different kind of sentencing pattern. I understand, but to the fellow who's going into prison, it's 61 months. Yes. And he gets out and does the same thing, and the district judge is somewhat irritated, so he gives him 62 months. But be that as it may, his concern was that in a reasonableness instruction, regardless of how you get there, in a reasonableness review, he thinks that they should get more this time for the very same crime that he only got 61 last time for. And, of course we have to say that's unreasonable. Now, where is it unreasonable? Because he's placing undue weight on the old sentencing guidelines. No, he didn't. He didn't discuss the old sentencing guidelines. He discussed the 61 months. He doesn't say the 99 guidelines specifically, but he goes back and he references the fact that my client got 61 months under the old guidelines. And so he's using that as a beginning point. He didn't focus on old guidelines. He focused on, as I read what he said, he was focusing on the 61 months and then commission of the same crime. Well, we would respectfully disagree. We would submit that in this matter, the judge gave undue weight to those old guidelines and that the guidelines have now changed substantially and offer a more incremental stair-stepping up and not just the immediate jump of plus 16. Where in the record has he said that he gave any interest or any credibility or any consideration at all to the old guidelines? At the time when the guilty plea is rejected, at that point in time when the AUSA and the probation officer are discussing the matter with Judge Martone, at that time I know that they discuss it. I have a reference in my notes to the transcript of 821.07 at 6. I do not have that transcript at hand. 621? 821.07 at 6. But I do not have that at hand, Judge. I'm sorry. In this matter, my client would have preferred, of course, to have received the benefit of that fast-track plea agreement. And be that as it may, even without the benefit of that fast-track plea agreement, we still feel that his number of prior encounters with law enforcement is not of an extraordinary number, although Judge Martone indicated that this was my client's fifth immigration offense and he was not getting the picture and that this was not sufficiently represented in the criminal history points. Notwithstanding that fact, we believe that 4A.1.3, which says it has to be substantially underrepresented, substantially underrepresents the seriousness of the criminal history, that that wasn't really satisfied here, that those five immigration priors were not substantial. And once again, we go back to the Gall analysis of extent of deviation, whether the justification is compelling, and whether there was a sufficient explanation by district court. What, in your view, do we have to find in order to decide for you? I'm sorry. I didn't catch the first part. What, in your view, do we have to find regarding the – what do we have to conclude regarding what the district court does? Well, you could – That would get us to the point you want us to go to. Well, you could take the simplest way, which would be to say that the judge erred in not granting a mistrial when the officer referenced the Yuma County Jail. Well, that would be a simple way to get to the point I'm looking at. Yeah, but would it be a proper and legal way? Go ahead. Well, you asked me the simplest, and that was the simplest. Go ahead. Another way would be to just say that there was procedural error when the judge penalized my client for using his constitutional right to go to trial, and that we can infer that from – How do we know it? Well, we can't be mind readers. It's true. But that's why the Carty decision says you can look at the pre-sentence report and the record as a whole, and you – The other thing we can look at is the sentence he received the last time – That's true. And the sentence he received this time – That's true. And what the difference between the two would be. Yes. And if we look at that, what would we find? Not much. One month. Right. One month. But, of course, from my client's perspective, you know, he feels that that was too much because it was improperly premised on the idea that the first sentence that he got was an appropriate sentence, and we reject that. We reject the idea that that first earlier 61-month sentence was appropriate. Well, to the extent there was any deterrence value in it, it didn't work very well. So I thought the judge was saying it would not be, you know, in accord with common sense to say, well, that didn't work very well, let's give him a lesser sentence. I'm sorry. I could not hear exactly what you said. I think the judge was saying the last time didn't seem to have much deterrence. He's got an understated criminal history because he's got five. Maybe the earlier client had seven, but he has five briars. So we have to do something to impress upon him that we're serious about him not coming and going illegally. Yes, that's – And it's only one month more. So I'm having trouble. So we would have to say that's unreasonable or we would have to say that's a legal error, correct? Right. You'd have to accept my basic premise that that's a reliance on the old guidelines. Old guidelines. Thank you. I think I'm out of time. You are. Yes. Now you get your chance and you don't have to smirk. Good morning. May it please the Court. My name is Lita Holland and I represent the United States. There was no plain error when the Court denied an untimely motion for mistrial by the defendant. In this matter, the government's first witness, Agent Castellanos, was the witness who mentioned the Yuma Detention Center. The trial lasted for at least several hours. There is an indication in the record that there were at least two breaks. The defendant did not take those opportunities or that time to make its motion for mistrial. In fact, the defendant waited until after the jury went back for deliberations to make the motion. And at that point, it was untimely. And so the district court denied the motion. However, even if the Court were to have entertained that motion, it was not error for Agent Castellanos to mention that he came into contact with the defendant at the Yuma Detention Facility. He did not say that the defendant was incarcerated or imprisoned. He did not say that he was in custody. He said he was assigned to the detention center. Yes, Your Honor, he did. However, the stipulation that the parties agreed to was that there would be no mention of how it was that the defendant was at the detention center. And that was due to a November 2006 conviction for possession of drug paraphernalia. And Agent Castellanos did not mention that at all, Your Honor. Furthermore, there was no objection made at that time, simply the motion made untimely after the jury went back for deliberations. For that fact, it's waived. And even if it were to have been entertained, we say that it was not error for the Court to allow the mention. Well, it's more than error. Plain error must be proven in this case because of the tardiness. Yes, Your Honor.  This is evidence of the defendant's judgment and conviction. And we apologize for the difficulty in locating this redacted version of the judgment and conviction. We did provide this to the Court this morning. This is a heavily redacted judgment and conviction. It's the government's position that this is used to prove an essential element, which is alienage, and for the defendant to be collaterally stopped from claiming that he's not an alien. For this reason, the district court properly allowed the government, who bore the burden of proof beyond a reasonable doubt, approving all these elements, including alienage. Now, was there an objection made to the admission of the sanitized judgment? Yes, Your Honor. There was an objection made, and the district court carefully considered whether this was more probative versus prejudicial and came to the decision that it was more probative. What was the nature of the objection? The objection was made before, excuse me, it was a 403 objection. And on the basis of what? On the basis that this was prejudicial to the defendant. Okay. Was the objection phrased in terms of there are other evidence that can be used which is less prejudicial? Yes, Your Honor. And was there? There was other evidence provided. However, the government's position was that the redacted judgment conviction was necessary to corroborate the defendant's own admission. I understand. But what was the other evidence? The defendant's own admissions of Mexican citizenship. There were also documents and testimony of defendant's prior deportation to Mexico. And last, there was testimony regarding documents in his A file, and those records demonstrated that he did not receive permission to address. Was the A file there? There were portions of the A file introduced as exhibits, but not the entire A file, Your Honor. Now, did the district judge consider these? Yes, the district judge specifically considered these. And concluded that? Concluded that because the government was the bearer of the burden to prove beyond a reasonable doubt that defendant was an alien, that it was more probative than prejudicial. Judge Martone specifically and explicitly said that. And were specific jury instructions given in relationship to how the jury should consider this judgment? Yes, Your Honor. They were given twice. They were given when the exhibit was introduced by the agent as part of his testimony. They were also given at the close of trial before the jury went to deliberate. Okay. And furthermore, the government also proposes that the defendant was given an opportunity on several occasions to stipulate to the alienage element. Defendant initially agreed to do this stipulation. However, by the close of trial, he had not submitted to the government this written signed stipulation. You'd have to accept that under Old Chief if the defendant had kept that. I'm sorry, Your Honor. I didn't hear that. If the defendant hadn't withdrawn his offer to stipulate to alienage, you'd have been in a difficult position not accepting it under Old Chief. But we don't have that issue here because he withdrew that offer, as I understand it. Correct, Your Honor. It's the government's... When I say Old Chief, I'm talking about the Supreme Court. Case Old Chief, not someone who's sitting there from the tribe in Arizona. Yes, Your Honor. The government's position is that perhaps the redacted judgment conviction would have been considered cumulative had the defendant stipulated to alienage, but he did not in this matter. Finally, the sentence reached by the district court in this matter was reasonable. The district court took careful consideration of the 3553 factors in this matter. Specifically, the district court was most concerned with the issue of deterrence. And the district court did mention in the plea hearing where it rejected the old sentencing guidelines. However, the district court did not rely on the old guidelines versus the new guidelines in order to reach its determination that a sentence of less than what the defendant had received for the same felony conviction would not be reasonable unless it was at least equal to that 61-month sentence or preferably longer than that 61-month sentence. The district court said, obviously, a 61-month sentence for a legal reentry did not deter the defendant from committing the very same offense. And for that reason, the district court reasoned that the sentence needed to be greater than the prior sentence of 61 months. In addition, the probation office itself recommended 62 months in its pre-sentence report here. What do you do if the argument counsel makes that the government, who is in charge of prosecutions for our country, was quite content to enter into a plea bargain of less than the prior commitment of 61 months, and that was rejected by the district judge? Counsel indicates that this indicates some feeling on the part of the district judge which was in error. What do you respond to that? That the prosecutor initially, using prosecutorial discretion, thought that the fast-track plea offer would have been appropriate for the defendant. However, that's not relevant, Your Honor, to the district court's decision to reject the plea or to the district court making its determination of what's a reasonable sentence in this matter. It's not relevant, but counsel indicates the relevant of the thinking of the judge that he's biased or he would have accepted the government's proposed plea bargain of a lesser sentence. No, Your Honor. The government would disagree with the statement that perhaps the judge in this matter was biased. The district court took great care in going through the 3553 factors. He cited to deterrence primarily, also respect for the law, the need to protect the public from the defendant reoffending in this case. He also took into consideration the nature and circumstances and the defendant's own immigration and criminal history in this matter. This was the defendant's fifth immigration conviction. He noted, excuse me, the district court noted that the defendant had graduated from misdemeanors to felonies. This would have been the defendant's third felony. And for that reason, the government's position is that this was a reasonable sentence that should be affirmed. I'll have a seat unless the court has any further questions. It appears there's no further questions. The case just argued, United States v. Rivera-Martinez, is submitted.
judges: Wallace, Farris, McKeown